This case on the docket is Agenda No. 13, No. 128468, Jamie Lichter v. Kimberly-Porter-Carroll. Are you ready to proceed, Counselor? I am, Your Honor. You may begin. Thank you. May it please the Court, Counsel. My name is Eleanor Roark, a representative defendant, Kimberly-Porter-Carroll, a special representative of the estate of Donna Christopher. This case revolves around a statute, 13-209 of the Code of Civil Procedure. The appellate court's decision in overturning the court's motion to dismissal order was incorrect. Its ruling went directly against this court's clear interpretation of Section 13-209 of the Code of Civil Procedure. There are three distinct sections, sections to section 13-209. Subsections B and C involve procedures involving a plaintiff when the defendant dies prior to suit being filed. So those are relevant here. There are time-limiting statutes, but there are also savings clauses for plaintiffs. The appellate court in this case applied Subsection B to, as it noted, standing alone and holding that plaintiff was able to name her attorney's employee as a special representative. However, Subsection B, based on its court's decision in Ralph and the interpretation of Section 13-209, is not applicable. Ralph said, this Court said in Ralph, the provisions of Section 13-209B presuppose that the plaintiff is aware of the defendant's death at the time he or she commences the action. Again, this Court made very clear in Ralph that Subsection B is invoked when a defendant dies before the statute of limitations expires, and the plaintiff is aware of the defendant's death before commencing or beginning a lawsuit. In such situations, if a personal representative exists, the plaintiff can simply identify and name that person under B. If no petition for lawyers of office exists, action can be commenced against a special representative after statute of limitations and within six months of the defendant's death, after notice to the heirs and legatees. So B extends, actually, the statute of limitations by about six months. And this makes sense in B, because although the plaintiff knows of the death, and there's a six-month period after the death, to name a person representative, or special representative, I should say, the plaintiff would be running up against a time deadline to do that, because they have that six-month time limitation. And if no personal representative is in existence, B says they can use the simplified procedure of appointing a special representative, which allows a quick method, to appoint someone, like an employee, a law firm, so again, can do so quickly and not violate time limitations. And that makes sense for B, because they do have that six-month time window to do that. But subsection C is different. And this Court said in Ralph, a separate set of requirements apply when, as in this case in Ralph, the defendant's death is not known to the plaintiff before the plaintiff commences an action against the deceased directly. This scenario is governed by 13-209C. And that was stated in Ralph. Well, section C is different. It goes to the timeframe of the plaintiff. They have to file subsection C. It's stated very clearly in Ralph. That original action has to be filed by the statute of limitations under C. And then it's a savings clause. They're given two additional years from that point to then name what C says, a personal representative, not a special representative. The term special representative is never noted in C at all. And again, this makes sense because it's a savings clause. There are two additional years allowed from the point it expires. Yes. Ginsburg. Counsel, do you agree that personal representative has a different meaning from special representative? I do agree, Your Honor. Okay. And tell me what is your definition of personal representative within the context of the statute? Well, personal representative is someone, means when someone appointed with a position for issuance of letters of office. It's used in the Probate Act, of course, quite a bit. It's referenced in Ralph quite a bit. Ralph's decision made a big distinction between the two. Special representative is for one purpose, to attend to one purpose. So not as broad, perhaps, as a personal representative. And again, Ralph discussed that in great detail with the differences in that case. And also the appellate court in this case made that distinction, too, and noted Ralph made that distinction as well. So C is very different than B. And it's according to the time, the mental state, really, of the plaintiff. Did plaintiff know that the decedent was deceased before he or she filed the lawsuit? And knowing that before they filed would be B. Not knowing would fall under C. Again, that is what Ralph said very clearly. Under subsection C, there are four requirements. After the death of the decedent, the party proceeds with reasonable diligence to move the court to substitute the personal representative as defendant. It has to be processed on that person. If process served more than six months, liability of the estate is limited to its recovery to the extent the estate is protected by liability insurance. And in no event can that be filed within two years, the amount of complaint, of the time limited for the commencement of the original action. In this case, there's no dispute that plaintiff did not know of the death of defendant until after the original complaint was filed. Counsel, I have another question for you. Sure. Is there any ambiguity in the statute as far as you're concerned? I don't believe so, Your Honor. There may have been some ambiguity before ñ not ambiguity, but this case was discussed in large part in Ralph and very clearly discussed. And they distinguish in ñ I'm not asking you about Ralph. Okay. Under the facts of this case, looking at the statute, do you think there's any ambiguity? I do not believe so, Your Honor. I think it's clear on its face, in read language, what that means. So I don't believe there is ambiguity there. And particularly in regard to subsection C, which is the relevant subsection in this matter, based on, again, what it says in subsection C alone, what the statute says and what this Court ruled on Ralph. Subsection C is the applicable court statute. Well, let me follow up on that. Assuming there is an ambiguity, would it be appropriate to look at the legislative history to resolve that? If there was an ambiguity, yes, there would be. In this case, again, I don't think there is an ambiguity. But I'm just asking you the hypothetical. If there was, it would be. And have you looked at the legislative history? I have. I have. What was the purpose of the subsection C, according to the legislative history? Subsection C was one of the original ones. I think it was enacted in 1989. And it was a savings clause. It was to protect plaintiffs, primarily for situations when they did not know a defendant was deceased. If they didn't know a defendant was deceased, and they filed a complaint against, that would be a nullity, right? And so they want to protect that interest of the plaintiffs, primarily, so they would have that cause of action would survive, even though it was originally filed against a deceased person. And, again, subsection C was enacted, I believe, in 1989. It has not changed since that time. There have been amendments to subsection B since that time, including 1997. But that was the only amendment to subsection B. And the only amendment with that subsection B was B-2. They added B-2 at that time. And what does the legislative history say about the reason for the addition of B-2? Again, savings clause. To allow a plaintiff to name a special representative in that situation. When the original action time limitation has expired. And it gives them additional time. Doesn't it really have more to do with whether or not the letters of office and whether the estate has been opened? Because it seems like it establishes a streamlined process for those circumstances where there has been no estate opened and there's been no letters of office issued. I know you seem to be concentrating on whether or not they knew someone was deceased. But why would there be a streamlined process and that be the distinction? Isn't it more that, you know, why should someone have to open the estate and get a personal representative? In effect, what they really need is someone for that, you know, for a special purpose if there has been, you know, there has not been an estate opened already. Well, I think it depends, Your Honor. I think the Relf decision made very clear it's not based on whether there was an estate opened. There was an estate opened in that case. But the decision, Relf, was not based on that fact. And what the statute really does is balance the interests of plaintiff and defendant. It's a savings clause for plaintiff, but there is also a necessity, and I think this was bypassed in the appellate court decision. There is an interest also of defendant. In this case, although plaintiff says in their brief they fell squarely within B2, Section B2, they did not. There was no notice given to the heirs and legatees of defendant at all. That's not addressed anywhere in the appellate decision in this case. Isn't there another group that has an interest here, too? The heirs and legatees? Absolutely. Isn't that being balanced here as well? It is. It is. It absolutely is, and that's why that notice is so important, because the heirs and legatees of defendant should get that notice and have the opportunity, if they desire to, come into the case, which is why subsection B talks about that. It says if personal representative is already open, they can name that personal representative. Otherwise, they can name a special representative. And again, why that is in place is because of that time difference between A, I'm sorry, B and C. The time difference is very different. In this statute or a time difference under the Probate Act? In this statute. When the time B, they have to file either the original time limitation or six months after, before six months have expired after the death of the defendant. Isn't that the same period of time in terms of claims and probate action? I think it could be, Your Honor, correct. It could be. But again, that's A's plaintiff, and that's why they amended, I believe, and added B-2 to that section. Again, they did not change C. And C is very dependent on if the defendant files a lawsuit, and they do not know the defendant has died. And so the original action is against the defendant. And C specifically says that, and this Court said that in Ralph. C is dependent on that situation. When the defendant dies, the plaintiff is not aware of that. They file the action against the deceased defendant. It's a nullity. It gives them two additional years. What was the purpose of the addition of B-2 when the legislature amended the statute in 1997 and added B-2? What was the purpose of that? It appeared to be from the history that plaintiffs set forth and the history in general, another savings clause, because, again, if the statute of limitations has expired, the defendant has passed away. Plaintiff knew the defendant was passed away. You have six months after death to name. They can do that quickly. Sorry? Would you agree that part of the reason was to streamline the process? I think streamline the process temporarily. Again, because they're up against a time limitation, the plaintiff. If they know the defendant is deceased, and perhaps they just found out, they only have six months to file against, to file that action. So streamline the sense that it's more urgent in that situation to file that action to preserve their cause of action. Let me read you a quote from the sponsor, the legislative sponsor of this. Rather than open a probate estate and expend a lot of time, money, attorneys' fees and costs, this would enable the court to appoint someone so that this civil case could continue, unquote. Wouldn't that be considered streamlining the process? That conversation goes, again, to B-2, which involves a special representative under Section B-2, which is when a case was not filed yet. They want to file the case so they can have it filed and not go up against that statute of limitations. That's why B-2 was put into place. It does have to do with Subsection C, which is the relevant subsection here. All right. That's what you're arguing. I'm arguing it, but I believe Ralph said that as well. This Court said that in Ralph. Subsection C is applicable. We're dealing with this case. Right now, I'm just asking you about the facts of this case, and put Ralph aside for a moment. Okay. I'm sorry. No, go ahead. Can you repeat your question, Your Honor? Would this apply? Would the streamlining of the statute would allow people to not have to go to probate court and open a probate estate before they can proceed with their lawsuit? Do you agree with that? I agree with that. I agree with that. And that's Subsection B. B-2. Yes. B-2. That is Subsection B. That's commencing the suit. They have to commence the suit, and that is under Section B. They haven't started yet. If we find that B-2 applies, then that would be the purpose of the statute has been streamlined to allow an individual to not have the expense of opening a probate estate and all of that before they could prosecute their lawsuit. Isn't that correct? That is correct for Subsection B-2. Okay. That's correct. Again, however — I'm sorry. I'm just trying to look at how each one of these sections, how they differ. What is the legislature trying to get at? So in B-1, we have the issue where an action may be brought against the personal representative of the deceased person, and it must be within six months of the person's death. Correct. I think that maybe is the claims period. Two. But if there's no estate that's been opened, then the court can move forward and appoint a special representative. But if that's the way it goes, the recovery is limited to the proceeds of the liability insurance. Correct. How does that fit in? I mean, that's going to be a significant difference in a case depending on whether a special representative has been appointed. I'm sorry. Your question is why would they include that in there, or — What does that tell us about the purpose of the statute? Well, B and C both have that within them. They both have that limitation in regard to the timing of that. That is a protection for defendant. But that does not mean that interests of defendant are protected by that alone, because it's limited. And, again, RELF does discuss that case. The reason I focus on RELF is this exact situation was discussed in RELF and by this court. And the court in that matter, this court, discussed that insurance proceeds. And they said the threshold problem with this argument about insurance proceeds and limited to that is that we have no basis for evaluating it. While plaintiffs may perceive no prejudice to the estate, currencies are inherently antithetical to it, and the estate may very well have a different view. Unfortunately, we do not know what the personal representative of the estate or the heirs or legatees think, because none of them were ever notified of this litigation or the appointment to defend against it. So, yes, it's limited, but I don't think that protects the defendant entirely because of that. If that were the case, why not just name the insurance company? That's not — there's a defendant here who has interest, and his or her legatees and heirs have an interest in this, too. So that limitation is there. But, again, there could still be prejudice, and there's a balance of interest for the defendant as well because of that. So isn't it true that if a personal representative has not been appointed or an estate hasn't been opened, then B-2 gives the plaintiff the right to ask the court in the case where his — in the court where his case is pending to appoint a special representative? Your Honor, he can only do that if, based on the language in B, the clear language in the statute, and this Court's interpretation of that statute in Ralph, if he filed suit, she filed suit, knowing that the decedent had died. Isn't Ralph distinguishable from this case in the sense that in Ralph, an estate had already been opened, and there was a personal representative? Actually, no, Your Honor, it was not. There was an estate opened, but that wasn't the basis for the decision in Ralph. The decision in Ralph turned on the fact when plaintiff knew of the death of the decedent. That was the basis of Ralph, why they decided subsection C was applicable. There was an estate opened, and it made it easier in that situation, but it was not the basis for that decision at all in that case. Again, a fact, but not deciding fact at all in Ralph. Again, this Court stated in Ralph that subsection C deals specifically, and the Court noted unambiguously, with the situation where defendant's death is not known by the plaintiff for the expiration of limitations, period, and unaware of the death, plaintiff sues the deceased defendant directly. That's exactly the situation here. Plaintiff failed to follow the requirements of subsection C, the time limitation of two additional years afforded by that subsection. Because of that, the Court did not have subject matter jurisdiction. The circuit courts in granting defendant's motion to dismiss recognized that and stated in its memorandum order that not granting the motion to dismiss under those facts that are akin to Ralph would turn Ralph on its head. The appellate court in this case, by taking B-2 alone, standing alone, changed the statute and had an interpretation in direct conflict with that in Ralph. Again, the statute is a balancing of interest, plaintiff and defendant. And B and C do that already. They're savings clauses, but they also protect the interest of the defendant. The appellate court's decision in this matter was concerned with the plaintiff's interest, which it should be. There's no interest, there's no note about notice. They took B and B-2 alone to say you can look at that with C. You cannot do that, Your Honors, because of clear language in this Court's decision in Ralph. For that matter, we ask the Court overturn the appellate court's decision. Thank you very much. Thank you very much. Counsel for appellate. Good morning. Good morning. Good morning. May it please the Court, Counsel, my name is Yao Denizulu, and I represent the appellee. I am humbled and appreciative of the opportunity to offer our response to the arguments made by the attorneys for Carroll. Regarding this Court's holding in Ralph, the legislative intent behind Section 13209B-2 as originally sponsored by the ISBA and ITLA in an effort to ease the process of naming a representative when a party or would-be party has died and the claim remains. The stated purpose of the sponsors was to avoid need to go to probate. Counsel, I'm going to ask you the same question I asked your opponent. So do you agree that the amendment was designed to streamline the process? Absolutely. And those benefits in streamlining the process, including providing litigants a time saver if a statute of limitations was approaching, reducing unnecessary costs of additional filings and attorney's fees, and to lessen the burden of the courts requiring not having additional cases clogging up the docket. This Court, you asked a direct question regarding Ralph. And Ralph had a holding. And in that holding, the singular holding is, conclusion. For the foregoing reasons, we hold that the plaintiff's substitution of her lawyer's secretary as special administrator in place of Mr. Grand Prix following expiration of the statute of limitations did not operate to preserve her otherwise invalid cause of action against him because an estate had already been opened for Mr. Grand Prix and the letters of office had been issued to the executor, period. That was the full holding of the court. And in this case, counsel, no estate had been opened and no letters of office issued. Isn't that correct? That's absolutely correct. And you took my thunder, but that's what happened in the Lichter case. There was no estate open, and the plaintiff had the option. The plaintiff still had the option to choose because the statute in C2 only refers to May. So essentially, the first district appellate court correctly decided the plaintiff's suit was timely filed. The first district carefully reviewed the court's decision and distinguished it appropriately with different facts in the Lichter case. Counsel, what about this issue of balancing the interest of heirs and legatees since there's not going to be notice, as you would have with the appointment of a personal representative? Well, I'd like to actually go to the statute on that because counsel did not, for Carroll, did not address that. And the actual B2 specifically says notice to the parties or heirs or legatees as the court directs. So it left discretion of the courts to make the determination whether what the appropriate or any notice was necessary. And when you have the case in front of the actual trial court, they're trying to address the issue of expediency at that point in time, and that's why B2 was part of the amendment. Did I address the court's question? Yes. Counsel, I'm going to ask you. So you are suggesting that B2 is what should apply here? Absolutely. And do you agree with the Richards Court that the time limits of B1 would also apply to B2? I do not. In fact, the Richards Court specifically discusses, identifies that the case is ambiguous or the statute is ambiguous. And that is why they go through this lengthy analysis. In fact, if we looked at the Lichter trial court and the Lichter appellate court, both of them essentially suggest that the statute is ambiguous. And so I do not agree that the interpretation, or because the ruling in the second district case showed that it was ruled against or put time limits of six months, that that's not the appropriate application. In fact, when you look at B1 and B2, they are the pre-amendment, the pre-1997 statute, and the amended statute was added to B2, and it stands alone. It stands alone because the language is very different. The language under B1 specifically deals with personal representative. And the Relf Court, the appellate court, and even the trial court in Lichter go through detail explaining what personal representative means in this context. But in this context with the amendment of B2, it introduces for the very first time special representative. And since B1 and C both are tracking on a personal representative, you have to look at B2 as being very much different and the purpose of B2 because, number one, the Richards case talks about ambiguous, the Lichter cases show it's ambiguous, the Amore case indicates it's ambiguous, and the Carroll defendant also cites other cases that go different directions. All of that is a suggestion that this is ambiguous, and therefore we need to go and look at the intent, the legislative intent. And so in this case, the appellate court reviewed the legislative history in the Lichter case and the statute of 209B2 to appreciate what the legislature intended to accomplish with the amendment. The amendment in question was presented to the House Judiciary Committee and then to the full House as a joint proposal of the probate and tort section of the ISBA. After thorough explanation of the bills, purpose and intent, by attorney Winkler, a representative of the ISBA, the Judiciary Committee was advised by one of the proposals, let me point out that this is a joint proposal for tort law and probate, and it's to simply facilitate litigation and reduce costs. After the ISB's explanation by the sponsors, it was sent to the floor by a unanimous majority in a unanimous vote of 114 to zero. It was then signed into law the same year in the same form in which it was proposed. Proponents of the bill without opposition were James Collins of the ITLA, attorney Charles Winkler, and Dan Houlihan, legislative counsel of ISBA. The defendant's appeal questions the statutory construction. Did the appellate court construe section 13209 of the code of procedure that the plaintiff timely filed the action against the defendant pursuant to a special representative? And I'm here to tell you that the Illinois State Bar Association, the Illinois Trial Lawyers Association, firmly believe the appellate court decided the case correctly, and I'm proud to adopt this position. And so when we have a statute that is ambiguous, the court directs us to look at the legislative intent to ascertain the proper analysis. And as we already talked about, we looked at Richard V. Vacas, and we looked at the Lictor decisions and others that show it's ambiguous. Utilizing the ambiguous analysis, we must look at the legislative intent. And the Supreme Court in Sandham v. Kuchler opined that the primary objective was not only to ascertain the legislative intent, but to give effect to the intent of the legislator. In the Sandham court, they looked at the legislative history before specifically on the sponsor of the bill, of the House and the Senate chambers to learn of the true intent. Now, this court has the opportunity to look at the legislative intent and give effect to it. Via the transcript of the ISBA and ITLA sponsors speaking to the House, including Attorney Winkler, the ISBA corporate counsel, and Representative Logan, and the audio that was provided to each one of you. That was identified and transcribed by Attorney Wienold and presented to the court. After all, it is rare that we can present to you the absolutely best evidence of the explanation of the intent and purpose for the unanimously adopted amendment, which is the subject matter of this appeal. Who better to explain and verify the intent, purpose of the legislative amendment than the organization that drafted it, proposed it, explained it to a unanimously approving House of Representatives? And the State Senate? And just as a reminder, for the very first time, the language of special representative was introduced in 1997. And this is what ISBA representative Attorney Winkler said. Basically, what we are proposing here is not a substantive change in the law. What we're asking you to do is to allow an easier way to commence law action when a person is deceased. And we believe that this legislation will accomplish that, not only as a time saver, but a money saver and a less burden on the court. And he starts off by talking, because it was done in tandem. It was 209 with 1008. And what he discussed specifically with respect to 209, which basically was mirroring 1008 in some respects, was that the law allows a filing of an action where a plaintiff of a defendant is deceased. The action survives. Now, the present law is silent as to the mechanics of appointing someone to commence the action when someone is dead. The procedure that's now involved is to go into the probate proceedings and ask the court to appoint an administrator or executor. That is a separate action. A separate filing fee. Matter that is set in the system that doesn't have to be there. Meaning, no need to go to the probate court. It gives a judge the power to appoint a special representative upon a motion filed by someone who says, look, my client is dead or the defendant is dead, and judge, please appoint someone to that. And I think there was questions that were asked of Mr. Winkler, or Attorney Winkler, and it was said, this is what the question was. Wouldn't it be true that usually the representative in the probate court would know that this action was going to take place when someone has died? Attorney Winkler responded, well, simply this. You wouldn't need to use the special representative amendment if there was someone, somebody in the probate division appointed. You just go ahead and serve that person. Which, incidentally, is what actually happened in Ralph. Ralph followed the specific intent of the statute in that respect with its holding. So, plainly, Attorney Winkler, Mr. Lane, who was also a sponsor, and with the acquiescence of the Illinois State Bar Association and the Illinois Trial Lawyers Association, should be given substantial weight in determining the legislative intent. I respectfully submit that had this court, had the audio in Ralph, which has been presented here to this court today, the court would have come up with precisely the same holding it had, but without having to wonder the reason for the amendment. The reason being to allow an action against a deceased defendant without the necessity of going through an unwanted, unnecessary probate proceeding, while at the same time guaranteeing nothing adverse could happen to the assets of the decedent's estate. With that being said, I would like to turn it over to Attorney Winkler. I'd like to point out all of the areas in which the appellate court took painstakingly review of what was going on. And one of the things that they identified is they cited Ralph. And in citing Ralph, they acknowledged that Section 13209 prior to its amendment, and this is from Ralph, only made provisions for actions by or against personal representatives. The reference to special representatives were all added at the same time in 1997. And at each instant, the new provision allowing appointment of special representatives to bring or defend actions were preceded by conditional clause, if no petitions for letters of office for the decedent's estate has been filed, and if no petitions for letters of office for the deceased. That was the distinction that Ralph found. The first district also cited Ralph when it stated, when Ralph stated, by adding the new term special representative and expressly limiting use of special representatives to situations where no petitions for letters of office have been filed, the General Assembly must have used the statutory term personal representatives as referring to individuals whom letters of office have been issued, and no other interpretation of statutory change is tenable. I could go on, but I don't know if there's any questions that the court may have. Okay. The first district appellate court examined the defendant's position in this case, and that the Ralph decision required that the plaintiff exclusive remedy pursuant to 209C, because the plaintiff was unaware of the death at the time of the filing. So the appellant wants to characterize the analysis here as hinging on whether a plaintiff knows or does not know the defendant has died, creating a kind of a bright line rule of sorts. As the first district appellate court found, that was not the holding in Ralph. The first district put the discussion in Ralph of B1 and C in the context because of the history of the statute. Both B1 and C are pre-amendments. The absence of any timing language is critical. There's no timing language in B2 at all. And so there doesn't have to be a pre-amendment. It does not speak to knowledge. And pursuant to a number of cases, including Mixell, Mixell 1B, Office of Secretary, the Supreme Court said we may not depart from plain statutory language by reading into this statute conditions not expressed by the legislature. I have to admit, I'm real confused. So I'm going to ask you a question. C is about filing an amended complaint, correct? It can be. Well, doesn't that's what it says? It says, after learning of the death, the party proceeds with regional diligence to move the court for leave to file an amended complaint. So it seems to be about amended complaint. In your case, there was a complaint filed and then there was an amended complaint filed, right? Correct. So why, but on the other hand, in your case, there's no personal representative, right? Correct. So in B, the way C seems to read is about filing an amended complaint against a personal representative. So on one hand, it's an amended complaint in your case, but there's no personal representative. Is that the dichotomy we've got here? Whereas B is about the original filing, filing against the personal representative. And if there's no personal representative, then there can be an appointment of a special representative and then there can be a filing against that person. Well, it's important to understand that C indicates may. This is what may be able to be done under C. B1 also refers to may. Those particular statutes were the pre-amendments. And so it does not require that it's only an amendment under B. And what's happening under B2, I'm sorry, under B2 is that the plaintiff has the right to choose. Well, B1 is about an action may be commenced against his personal representative within six months after the person's death. So that's the commencement of the action. It sounds like B is B1. B2 is what happens then. You're going to commence an action, but there's no personal representative that's been appointed. Therefore, the court can appoint a special representative. And then so that section seems to be about commencing an action. And then C seems to be about amending an action. Well, it also says if that's correct. I'm not sure where that goes. Because C does talk about amending to include, to name the personal representative. It doesn't talk about amending to name the special representative, correct? Yes, that's correct. But I think what has to be, how we look at this statute is we have to look at it in the two parts that it came in, 1989 and 1997. Because this process was somewhat cumbersome, another option was provided. And so when we look at this new option, we have to look at the option and the effect and the intent of what was behind that. And if we are looking at the intent, and we have a number of entities indicating that it's ambiguous, we have to go to the legislative intent. And so the intent of the legislature was to allow an amended complaint to be amended. After the appointment of a special representative. Is that what you're saying? Well, I think that B-2 can construe that as allowing that as well. Is there any time limitation in B-2? No, that's another reason why it's somewhat ambiguous. But you can presume that as the court indicated under the Probate Act, we know that they have that six-month process, which is strictly associated with probate. And that the component of C, which also talks about that additional two-year period, is likely to apply. And if you want to really go further, you go back to the relation back doctrine under 616, which allows that amended pleading to be appropriate. I have one quick question before we go. You are absolutely arguing that there's an ambiguity here, and based on that ambiguity, we have to look at the legislative history. Is that correct? Absolutely. Thank you. There was a lot of discussion in Mr. Dinizolo's response about legislative history. Again, legislative history should only be looked at if the language is ambiguous. And we believe it is not in this case. Additionally, even if you look at the legislative history, which actually Ralph did look at the history of that, it's mentioned in Ralph. So to say that it wasn't considered by this Court in Ralph is incorrect, because it was looked at, to some degree it was. But again, court found that subsection C unambiguously says that it applies in a situation in an amended complaint, as Your Honor said. When the action has already been filed, and they've found out, determined that the defendant is deceased, and they have to amend the complaint. That is subsection C. So C has those two things? Yes. Correct. And that is why there was no subject matter jurisdiction in this case, because that requirement was not followed by plaintiff in this case. It is misreading of Ralph that that case was dependent on the fact that the state was open. It was not at all. Ralph depended on, again, the time frame in terms of when plaintiff determined that the defendant was deceased. It was determined before it was filed the defendant was deceased. They knew that before the action was filed, the defendant would file an original complaint, knowing that, and file against either the personal representative or, when B-2 was amended, to add that special representative. That's B. C is very different. C, again, is an amended complaint. They don't know a defendant is deceased under B. And they find out after that, and after statute of limitations is run, they get two additional years. What do they do if there is no personal representative? They have to go to court to have one named. They have to go to court to have a personal representative named. They have to go to probate and have a personal representative named. Yes, they do. But I would say that they have two additional years to do that. If they could walk down the hallway and name their secretary or paralegal or law partner, which is done in this case, the special representative that I'm representing, Kimberly Porter Carroll, is an employee of Plaintiff's Law Firm. If they could do that under C, why would they need two years to do that? The Court gives them ample time to do what is considered stated. Are you talking to me about the time? Is that what the issue is in this case? The time in terms of this case. I'm sorry, Your Honor. You're talking about the amount. Why didn't they do it sooner? But that's not what this case is about, is it? It's not about that. No, it's not. I'm saying with regard to Section C, why would the legislature give them two years to do that? I'm going to ask. This is to follow up on your question. I'm real confused. Okay. Motion to dismiss, correct? Correct. What was the basis of the motion to dismiss? 619, additional matters to defeat the claim, and that was because of the statute. There was no subject matter to it. Because it was time-barred? It was time-barred, correct. So it is a matter of time. It is a matter of time. It is. It is a matter of time. I'm confused. Maybe I thought about the two years. I'm saying Subsection C gives the plaintiff two additional years after the original statute of limitations expired to name a personal representative. They have two additional years after that time. Plaintiff did not do that in this case, and so it was time-barred, and defendant filed a motion to dismiss, which was granted by the court. Because, again, there was no subject matter jurisdiction. Subsection C was not complied with. And there's a lot of talk about B. Subject matter jurisdiction? There was no jurisdiction. It was time-barred? Correct. It was time-barred. It was. That was the basis of the argument. That's what the trial judge said, that it was not filed within the original two-year period. The two years after the two additional years under Subsection C, because there were two additional years under Subsection C. The original complaint was filed timely, but that complaint was filed against a deceased defendant. It was an annulity. Subsection C... It was not filed February 27, 2016, right? And the amended complaint was filed May of 2018, right? Past the two years, correct. The additional two years. The original complaint was filed timely, but it was filed against a deceased defendant. Subsection C-4 gives the plaintiff two additional years to amend the original two-year statute. To name a personal representative. It's a savings clause. It gives them those two additional years past that original limitations period. Again, it's a savings clause to benefit plaintiff in that case. And so that wasn't done. That additional two years that plaintiff had wasn't complied with. And so it was, again, annulity because there was not a defendant who was living. And it was improperly done, and so it was dismissed by the court. Just deal with the amendment, again, B-2, and I don't want to get on B-2 too much, because really I think B-2 is not applicable here at all. And that's very clear from the language in the statute and the Richards case, which Your Honor noted. The Richards case did talk about B-2, and again, B-2 is not the relevant section here. Really, very strongly that subsection C is relevant based on the fact that the plaintiff did not know of the death of the defendant, filed an original action against the deceased. But Richards talks about B-1 and B-2, and Richards essentially said you cannot, it's an absurdity to think you can look at B-2 alone and take that apart and alone and look at that. There's no time frame there, there's nothing there. But that's what the appellate court did in this case. Richards said you cannot do that. It doesn't make sense. They complement each other, B-1 and B-2. You can't just simply take B-2 apart and say, well, look at this alone. As Your Honor mentioned, there's no time frame in B-2. So what time frame do you go with? It was, I think, the appellate. So the special representative was appointed more than two years after the injury. Is that the problem? More than that, it was under, if you look at C, subsection C-4, in no event can a party commence an action on the subsection C unless a personal representative is appointed, amended, complaints filed, and two years of time limited for the commencement of the original action. That was violated as well. They get additional time there. It's a savings clause. They get additional time from that two years to name a personal representative. So they get that additional time to do that. They get more time. It is a savings clause, no question, for a plaintiff. And because they get that additional time, to name a personal representative is something that is required by the statute to do. That is clear from the statute. There's a difference between personal representative and special representative. And I would submit that if you ---- Kagan, would you have an argument here if the special representative was appointed before February 27th of 19 or 2018, within the first two-year period? Was the original action filed? No. I would. No. My question is if under B-2, a special administrator was appointed within the original two-year period. It depends on whether DePaul is under B or C. It depends on the fact that B is limited to actions that are original actions and C is not. C are amended actions once it is filed against a deceased defendant. There is a difference there in the legislature in terms of the statute and the way they did this. There is a difference. And it's clear in a space the way they have this written in the statute. I know it's an argument that's ambiguous. It's really not. And Ralph, this Court in Ralph explained it in some detail. Counsel, if we were to accept that B-2 was applicable here, the Richards case does in fact say that the B-1 time limitations still apply. Is that right? Well, the Richards case also said, though, that in that case the reason B applied and not C was because it was an original action. It was not an amended complaint. The plaintiff knew in Richards. There was no question. It was undisputed. The plaintiff knew the death of the decedent before the suit was filed. That's a difference. Why does it make a difference? I'm not sure why not. It's an original complaint. We know it can be filed within two years, right? And then the second section is about amendments. What happens if it's filed? What if the special administrator is appointed within the first two years? Well, the difference is, again, going back to the reason you have B and C, is B, the time limitation in B begins, they have six months, they have original statute limitations, and they have six months from the plaintiff's death. Again, that's a shorter time frame to do it. And so you do have a situation where you have to perhaps very quickly appoint a special representative to fill that, with notice to the other side. Defendants, players, and legatees have to get that notice. They want to substitute, and they can. It's also an option. A plaintiff can also name a personal representative. It's an option under B. But, again, there are different time limitations in B. They're not under the time limitation in C. It's an option. But isn't it only an option if there is no letters of office issue under B? I mean, if there are letters of office, then it's the personal representative. They can name a personal representative. That's correct. Yes, yes. Again, no, they don't name a personal representative. Well, their complaint, I should say. The complaint, yeah. The complaint would be against the personal representative that's already been named in the estate. Correct. That would be, yes. Which was what Ralph said, is that because there had been a personal representative named, then that is who was to be served. Correct, correct. But, again, Ralph was not dependent on that fact. And that's very important to note. That was a fact in Ralph, and it certainly made it easier because there was a personal representative already in play there. But, again, that was not dependent on the Ralph. That fact was not why the Ralph court, this court, held that it did. They held that based on whether B or C applies, based on whether plaintiff was aware of whether defendant was deceased before filing a suit. That was what it was based on, and not because there was a personal representative. Counsel, your time has expired. Okay. Thank you. For these reasons, for the reasons stated, I'm going to ask you to reverse to the Capitol Court. Thank you very much. Thank you very much. This case, number, Agenda 13, Number 128468, Jamie Richter v. Kimberly Porter. I'm going to give you both for your spirited arguments.